

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/13/2011

| | | |
|---|---|---|
| IN RE: | § | |
| ASPEN EXPLORATION INC | § | CASE NO: 08-50325 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| JANET NORTHRUP | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-5008 |
| | § | |
| NEW CENTURY EXPLORATION, INC. | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION
## REGARDING PARTIAL SUMMARY JUDGMENT
## (DOC ## 16, 17)

      In late 2008 and early 2009, Aspen Exploration, Inc. ("Debtor") and New Century Exploration, Inc. ("New Century") engaged in extended discussions about Aspen investing in various oil and gas exploration projects that New Century was promoting, including the "Manso Prospect." Documents were signed at the end of 2008 and also in early 2009, and Debtor paid New Century $415,000. The Trustee contends that there was no binding contract between the parties and that the Trustee is entitled to recover that money. New Century contends that the signed documents constitute a binding contract for Debtor to purchase a 97% working interest in the Manso Prospect and for Debtor to drill and to operate the prospect under a Joint Operating Agreement (JOA). New Century further contends that Debtor breached the contract and owes New Century the balance of the purchase price plus $30,000,000 in damages. Both New Century and the Trustee moved for summary judgment. The Court concludes that there are material issues of fact regarding (i) whether Debtor's signature on the Second December 5 Letter combined with Debtor's payment of $364,500 constitutes Debtor's acceptance of New Century's first offer to sell, (ii) if so, what are the legal rights flowing from that contract, and (iii) whether the Trustee is entitled to recover the money. However, the Court further concludes that there is no material issue of fact regarding whether the discussions between the parties subsequent to Debtor's wire transfer of $364,500 to New Century on January 15 resulted in binding legal obligations. Those discussions (and the February 18 Replacement Documents) do not constitute a contract. Therefore, the Court has by separate written document, granted partial summary judgment and scheduled a pretrial conference for further case management.

## ISSUES POSTURED FOR SUMMARY JUDGMENT

A number of issues (both by Plaintiff and by Defendant) have been combined in this adversary proceeding.[1]

1. A motion by Defendant New Century for relief from the automatic stay;[2]
2. The Trustee's objection to New Century's claim # 299;[3]
3. The Trustee's complaint in this adversary proceeding to recover pre and post-petition transfers under Bankruptcy Code §§ 542, 544, 549, and 550.

New Century filed a motion for partial summary judgment.[4]  The Trustee filed a motion for summary judgment on all issues.[5]

## JURISDICTION

This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code.  The United States District Court has jurisdiction under 28 U.S.C. § 1334(b) and (e).  By Order dated August 9, 1984, superseded by General Order 2005-6 on March 10, 2005, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district.  This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (G), (H), and (O).  The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1).  The parties have agreed that the Court has core jurisdiction.

## UNDISPUTED FACTS

1. New Century obtained a mineral lease from JD Hudgins, Inc. ("Lessor") for exploration and development in Wharton County, Texas.  New Century named the prospect the "Manso Prospect" and solicited investors to finance development of the prospect.  The business plan was to sell working interests to investors who would finance and who would jointly develop the prospect by execution of a Joint Operating Agreement (JOA), on standard industry terms.[6]

2. New Century's negotiations with Aspen Exploration, Inc. ("Debtor") began about October, 2008.

---

[1] *See* order consolidating complaint in this adversary proceeding, docket # 2.
[2] Bankruptcy Case Docket # 521.
[3] Bankruptcy Case Docket # 536.
[4] Docket # 16.  (Except as otherwise noted, all docket #'s are references to docket numbers in this adversary proceeding.
[5] Docket # 17.
[6] The proposed form JOA is the copyright form issued by the American Association of Petroleum Landmen, No 610, 1983 revised.

3. An involuntary bankruptcy petition was filed against Debtor on November 17, 2008, and an order for relief was entered on March 24, 2009.

4. During the "gap period" from November 17, 2008, to March 24, 2009, Debtor continued in possession of its assets; no trustee was appointed.

5. New Century talked with a number of potential investors about participation in the Manso Prospect. The initial discussions with Debtor contemplated that Debtor would acquire a 58% working interest.

6. On November 19, 2008, Debtor wire transferred $50,000 to New Century.[7] An email stated that the money was "earnest money" for the 58% interest in the "Manso Prospect," "subject to a mutually agreeable Participation Agreement."[8] The email also stated that a form of participation agreement would be forwarded "in the next few days."

7. On December 5, 2008, New Century sent a letter to Debtor (the "First December 5 Letter") which constituted an offer to sell to Debtor a 58% interest in Manso. The letter stated:
    a. The letter would constitute a binding contract when accepted according to its terms.
    b. The requirements for acceptance of the offer were:
        i. Debtor was required to execute the acceptance line of the document and to return the fully executed document by December 15, 2008;
        ii. Debtor was required to return payment in the amount of $365,400 with the executed document.

8. Debtor executed a copy of the First December 5 Letter, but the signature is not dated. There is no summary judgment evidence of when the document was signed.[9]

9. New Century sent Debtor another letter, also dated December 5, 2008 (the "Second December 5 Letter").[10] The Second December 5 Letter seems to be identical with the first, except that the deadline for Debtor's acceptance of the proposal and for payment of the purchase price was extended to December 23, 2008. There is no summary judgment evidence of when the Second December 5 Letter was sent or when it was received by Debtor.

10. On December 30, 2008, Debtor:
    a. Struck through the December 23 date in the Second December 5 Letter and inserted December 31, and

---

[7] New Century Exhibit A.
[8] Trustee's Exhibit 12.
[9] New Century Exhibit B.
[10] New Century Exhibit C.

      b. Signed and dated the acceptance.[11]

11. Debtor sent the acceptance of The Second December 5 Letter, to New Century with a check for $365,400, by Federal Express on January 7, 2009.[12]

12. The check was dishonored and returned by Debtor's bank because there were insufficient funds in Debtor's account.

13. New Century sent an email Debtor on January 12, stating that New Century's bank would not allow New Century to re-deposit the check and therefore New Century would require a wire transfer.[13]

14. Debtor did not make the wire transfer promptly. On January 15, 2009, New Century sent Debtor an email in which New Century stated:
    a. That "Our agreement has expired."
    b. New Century further stated that it was willing to give Debtor an extension of time "contingent upon your wiring the stated funds to New Century by the close of business on January 16, 2008 (sic)."
    c. The email further states:"You are in possession of several other expired agreements, and we discussed perhaps revising those subject to and after the Manso payment is received."

15. On January 15, Debtor wire transferred $365,400.00 to New Century.[14]

16. On January 24, at 10:44 PM, Debtor sent an email to New Century that reads, in part: "Earl said that you might have some people drop out???? Please just let me know the deal. We can and will drill the field 100% aspen if that's what you want us to do??? I am in Denver all day tomorrow but can be reached by e mail. Lets go get this one drilled (*sic*)!"[15]

17. At 11:21 PM New Century replied: "We had some dropouts, including a big one on a 3D that's at a critical stage. Manso is the best we've got but thanks, I could use some help on this one if you can take any more at the same trade. I'll check it out tomorrow and let you know what's available (*sic*)."[16]

18. Apparently New Century did not follow up as promised, because on February 3, at 9:21 PM, Debtor emailed New Century again inquiring about the status of "manso north."

---

[11] New Century Exhibit D.
[12] Trustee's Exhibit 19.
[13] Trustee's Exhibit 20.
[14] New Century Exhibit E.
[15] Trustee's Exhibit 24.
[16] *Id.*

19. Later on February 3, New Century sent Debtor an email stating that 98% of Manso was available. The email includes the following statement: "The trade I mentioned was 25% back-in working interest and that should extend over your entire interest."

20. On February 4 Debtor responded by email: "We can handle it, no prob….. Lets talk details at nape (*sic*)." The meaning of "it" is undefined. Presumably "it" means Debtor's acquisition of a 98% interest in the Manso Prospect, but it is not entirely clear whether the other projects (such as Dinsmore and Yellow Rose—*see below*) were included.

21. On February 10, Debtor emailed New Century: "How much do we own?????"[17]

22. On February 11, New Century responded: "The interests available are 97%[18] of Manso and 82% of Dinsmore. There is 35% (after casing point) available in Yellow Rose if you want it and I'll attach the summary. I'll email paperwork tomorrow if you confirm your interests."[19]

23. On February 18, New Century emailed[20] Debtor letter designated as "replacement documents"[21] ("Replacement Documents"). The document is an offer, in the same form as the Second December 5 Letter, for Debtor to purchase 97% of the Manso Prospect. The offer required Debtor to accept the offer by (i) signing and returning the acceptance by February 23, 2009, and (ii) including with the acceptance a payment of $611,100.

24. Debtor signed the agreement on February 24[22] and returned it to New Century on February 25, but without any payment.[23]

25. On February 25, at 3:37 PM, New Century emailed Debtor,[24] concerning Debtor's failure to accept the offer timely and concerning Debtor's failure to make payment. The email proposed an alternative agreement:
    a. Debtor would pay the lease rental due the Lessor, $163,035, by March 31st;
    b. Debtor would pay New Century $245,700 by March 15;
    c. The well would be spudded by June 15th;
    d. All payments be forfeit if these conditions were not satisfied.

---

[17] Trustee's Exhibit 27.
[18] There is no summary judgment evidence indicating how 98% became 97%.
[19] *Id.*
[20] Trustee's Exhibit 28.
[21] New Century Exhibit F.
[22] *Id.*
[23] Trustee's Exhibit 29.
[24] *Id.*

26. On February 25, at 4:30 PM, New Century sent an email to Debtor.[25] The email refers to a conversation in a recent telephone conversation in which Debtor allegedly stated that Debtor would be "sending the funds" on March 2.

27. On March 2, New Century sent an email to Debtor.[26] The email states: "As we discussed today, if you wire the funds called for in our agreement by close of business tomorrow, March 3, 2009, our agreement will be valid and you will own 97% of the Manso Prospect."

28. New Century does not assert, and there is no summary judgment evidence that Debtor ever performed any of the following:
   a. Payment of the consideration of $611,100;
   b. Any of the conditions in the New Century 3:37 PM email of February 25;
   c. Payment of the funds as described in the 4:30 PM email on February 25;
   d. Payment of the funds as described in the March 2 email.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[27]

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence.

---

[25] Trustee's Exhibit 30.

[26] Trustee's Exhibit 31.

[27] Rule 56 was amended, effective December 1, 2007. Although most changes were stylistic, the changes to Rule 56(c) were substantive. Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met. Effective December 1, 2007, the word "shall" was changed to "should". The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "even when a motion for summary judgment is properly made and supported, it need not be granted . . . [s]uch a motion may be granted - indeed, it should be granted - but it does not have to be granted." Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

*Malacara v. Garber*, 353 F. 393, 405 (5th Cir. 2003).  The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.
   If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact.  *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).  The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue.  *Celotex Corp. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507.  When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

   If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelrs Indem. Co.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## **CONCLUSIONS**

New Century argues that there are two documents that evidence a contract.  The first is the executed Second December 5 Letter.  The second is Debtor's signed acceptance of the February 18 Replacement Documents.

A.   Did Debtor Accept the Offer that New Century Made in Its Second December 5 Letter and What Are the Consequences of Debtor's Signature on That Document?

It is undisputed that Debtor signed the Second December 5 Letter and returned it to New Century on January 7, 2009, with an NSF check.  It is clear that this action was not timely and did not comply strictly with the requirement that Debtor make payment with the acceptance.  It is

undisputed that Debtor and New Century had further discussions, and that Debtor then wire transferred the money to New Century.

New Century argues that the post-January 7 discussions, combined with Debtor's payment and New Century's acceptance of the payment, constituted acceptance of New Century's offer in the Second December 5 Letter.

The Trustee argues that there no binding obligation could have been created because (the Trustee argues) the terms of the deal were so vague that there could be no meeting of the minds and because there were conditions precedent that were never satisfied. The Trustee principally points to New Century's failure to obtain Lessor's consent to the assignment of the Lease. On this argument, *i.e.* that there <u>could not have been</u> a contract based on the Second December 5 Letter, the Court disagrees. The document states that "When accepted by you in the manner hereinafter indicated, this letter shall constitute a contract and agreement (the "Agreement") … relative to the Manso Prospect…" The agreement is not conditional on Lessor's consent or on resolution of the other matters that the Trustee asserts as ambiguities.

The Court finds that there is a material issue of fact over whether the tardy payment and acceptance of the payment was adequate to waive Debtor's failure to meet the deadline. There are also issues of fact regarding the consequences of failure to obtain Lessor's consent.

A reasonable reading of the entire document in context suggests that even if a contract was confected by the Second December 5 Letter, performance of the agreement was impossible unless several conditions were satisfied. One of those issues (like Lessor's consent) is discussed in detail in the Trustee's memorandum. Failure to obtain the Lessor's consent may have been a default by New Century or it may have been a condition subsequent that may have excused Debtor from performance under the contract, if indeed there was a contract. These are issues of fact for trial.

Another issue, which neither party has discussed, is the fact that New Century never obtained financing for the remaining 42% of the development expenses. The Court reads the Second December 5 Letter (with the attached JOA) as a proposal that would have obligated Debtor to pay 58% of the development costs, conditional on New Century providing (or finding) the remaining financing. It is clear from the summary judgment evidence[28] that New Century did not provide the remaining investors or funding. The Court sees no provision in the document for the consequences of New Century being unable to produce funding for the remaining 42% of the development.

Those issues are material issues of fact for trial. Summary judgment is denied on whether the Second December 5 Letter constitutes a binding contract, on what legal rights and obligations flow from that contract, and on whether the trustee entitled to recover the money.

---

[28] *See* findings of fact paragraphs 16 through 19.

B.      Do the Replacement Documents Constitute a Binding Contract?

On January 24, 2009, barely a week after the date when New Century took Debtor's money, New Century admitted that it would not be able to produce investors or alternative financing for the remaining 42% of the Manso Prospect; New Century asked for Debtor's help.[29] New Century and Debtor began discussions about whether Debtor would purchase 97 or 98% of the Manso Prospect instead of 58%, or in addition to 58%.

New Century sent Debtor an offer to sell to Debtor 97% of the Manso Prospect, (the February 18 Replacement Documents). Those documents are in the same form as the Second December 5 Letter, *i.e.* an offer to sell with strict conditions on how the offer can be accepted. As noted above, New Century's offer states: "When accepted by you in the manner hereinafter indicated, this letter shall constitute a contract and agreement (the "Agreement") … relative to the Manso Prospect…"

The Trustee argues that the February 18 Replacement Documents <u>could not</u> be a contract, for the same reasons that the Trustee argues that the Second December 5 Letter could not be a contract, *i.e.* failure to obtain Lessor consent, *etc.*. The Court need not reach that issue. The summary judgment evidence is clear and is unrebutted. Very simply, Debtor never accepted the offer (February 18 Replacement Documents) according to its terms. When Debtor did not comply with the initial requirements, New Century gave Debtor several alternative terms for acceptance. Debtor never satisfied those terms either.

It is simple hornbook law that no contract is created if an offer is not accepted according to the terms of the offer or on some mutually agreed modification of those terms. New Century clearly stated terms for acceptance, and New Century clearly stated alternative terms for acceptance. Debtor never accepted according to any of those terms. The Replacement Documents constitute discussions for a contract. They do not constitute a contract.

C.      Relief from the Stay, Objection to Claim, and Recovery of Funds

Determination of New Century's motion for relief from the stay, of the objection to claim, and of whether the Trustee is entitled to recover Debtor's payments to New Century depends on whether the Second December 5 Letter constitutes a contract and, if so, what the mutual obligations and liabilities are. Because there are material issues of fact about the efficacy of the Second December 5 Letter, there are issues of fact regarding relief from the stay, objection to claim, and recovery of funds. Summary judgment is denied on those issues.

SIGNED 01/12/2011.

_Wesley W. Steen_
Wesley W. Steen
United States Bankruptcy Judge

---

[29] *See* findings of fact paragraph 16.